FILED

2026 Mar-16  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GIORGI TOSHKHUA,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:26-cv-00194-MHH** |
| | } | |
| **BARRY SMITH, et al.,** | } | |
| | } | |
| **Respondents.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On February 8, 2026, Giorgi Toshkhua, a citizen of Georgia, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 after the United States Immigration and Customs Enforcement Agency took him into custody in Tennessee and detained him in the Etowah County Jail.  (Doc. 1, p. 5; Doc. 1-1, p. 4).[1]  Mr. Toshkhua names as respondents Barry Smith, Warden of the Etowah County Jail; Mellissa Harper, ICE Field Office Director for Alabama; Markwayne Mullin, Acting Secretary of the Department of Homeland Security; Todd Lyons, Acting Director of ICE; and Pamela Bondi, Attorney General of the United States.  (Doc. 1, p. 5).[2]  Mr.

---

[1] Mr. Toshkhua attached to his petition the United States Department of Homeland Security's detainee locator showing that he currently is detained in the Etowah County Jail, a photo of a notice he received from DHS on January 21, 2023, concerning his application for asylum, and screenshots of news articles involving stories similar to Mr. Toshkhua's factual allegations.  (Doc. 1-1).

[2] On March 5, 2026, Mr. Mullin became the Acting Secretary of the Department of Homeland Security, replacing Kristi Noem.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Mullin is automatically substituted as a party for Kristi Noem.  *See* Fed. R. Civ. P. 25(d)

Toshkhua filed with his habeas petition a request for emergency injunctive relief. (Doc. 2).

On February 10, 2026, the Court granted Mr. Toshkhua's request for emergency relief and enjoined the respondents from transporting Mr. Toshkhua outside of the Northern District of Alabama. (Doc. 4). On February 11, 2026, the respondents requested 21 days to respond to Mr. Toshkhua's habeas petition. (Doc. 7). That day, the Court held a telephone conference with the parties during which the Court granted the respondents' request. (Doc. 9).[3] The Court extended the TRO prohibiting Mr. Toshkhua's transport outside of this district through Monday, March 16, 2026, at 11:59 PM CST. (Docs. 9, 15, 19).

***

As noted, Mr. Toshkhua is a citizen of the country of Georgia. He fled Georgia and entered the United States on foot without inspection on September 3, 2022, to seek asylum. (Doc. 1, p. 2, ¶ 1; Doc. 1, p. 6, ¶ 17; Doc. 14-1, p. 1). That day, United States Border Patrol in Calexico, California detained Mr. Toshkhua, and on September 8, 2022, he was paroled into the United States. (Doc. 13-2, pp. 2–3;

---

(Although the public officer's "successor is automatically substituted as a party" when the predecessor no longer holds officer, the "court may order substitution at any time. . ..").

[3] A transcript of the hearing is available upon request.

Doc. 14-1, p. 1).[4]

Mr. Toshkhua's parole document states that the "purpose" of his parole is "212(d)(5)." (Doc. 14-1, p. 1). The reference is to § 212 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(d)(5). Section 1182(d)(5) provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Mr. Toshkhua was released with an I-94 form. (Doc. 13-

---

[4] The respondents filed a DHS Form I-862 Notice to Appear regarding Mr. Toshkhua. (Doc. 13-1). The form is dated February 4, 2026. (Doc. 13-1, p. 4). On the form, DHS asserts that Mr. Toshkhua entered the United States on an unknown date and that he was not paroled by an immigration officer. (Doc. 13-1, p. 1). The parole document that Mr. Toshkhua has filed, (Doc. 14-1, p. 1), which DHS issued on September 8, 2022, contradicts the information regarding entry and parole in the DHS Form I-862. Information regarding Mr. Toshkhua is available to USICS agents and officers under his alien number, which ends in 914. (Doc. 1-1, p. 6; Doc. 14-1, p. 1). The information about Mr. Toshkhua's point of entry and his parole was available to USICS agents and officers on February 4, 2026 as evidenced by the inclusion of the information in the February 4, 2026 I-213 and EARM forms, which the respondents attached to their response to Mr. Toshkhua's petition. (Docs. 13-2, 13-3).

For example, Mr. Toshkhua's EARM form, dated February 4, 2026, (Doc. 13-3, p. 2), states that Mr. Toshkhua was apprehended by U.S. Border Patrol on September 3, 2022, (Doc. 13-1, pp. 1–2), and "was released on interim parole due to manpower and space constraints," (Doc. 13-3, p. 1). The stated "purpose" of the parole on Mr. Toshkhua's parole document, (Doc. 14-1), is inconsistent with DHS's description of his parole as based on "manpower and space constraints." (Doc. 14-1); *see* 8 C.F.R. § 1182(d)(5)(A).

3

2, p. 3; Doc. 13-3, p. 2; Doc. 14-1, p. 2).[5]

Between September 2022 and January 2023, Mr. Toshkhua filed an I-589 "Application for Asylum and for Withholding Removal." (Doc. 1-1, p. 6). Via a USCIS Form I-797C, Notice of Action, Mr. Toshkhua was given an appointment with the United States Citizenship and Immigration Services Brooklyn, New York Application Support Center in February 2023. (Doc. 1-1, p. 6). His application for asylum is pending before United States Citizenship and Immigration Services. (Doc. 1, p. 2, ¶ 3; Doc. 13-3, p. 2).[6] He is married to a United States citizen who is

---

[5] "Form I-94 records the arrival and departure dates of people visiting the U.S." USAGOV, https://www.usa.gov/arrival-departure-record (last visited Mar. 11, 2026). "International travelers visiting the United States can apply for a provisional I-94 or retrieve their I-94/I-95 admission number/record (which is proof of legal visitor status) as well as retrieve a limited travel history of their U.S. arrivals and departures." *I-94/I-95 Website Travel Record for U.S. Visitors*, U.S. CUSTOMS AND BORDER PROTECTION, https://i94.cbp.dhs.gov/home (last visited Mar. 11, 2026).

[6] The narrative portion of Mr. Toshkhua's EARM Form states that Mr. Toshkhua "filed an I-589 which remains pending." (Doc. 13-3, p. 2). ICE's website explains that aliens should "[u]se this [I-589] form to apply for asylum in the United States and for withholding of removal (formerly called "withholding of deportation"). You may file for asylum if you are physically present in the United States and you are not a U.S. citizen." *I-589, Application for Asylum and for Withholding of Removal*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/i-589 (brackets added) (last visited Mar. 11, 2026).

Non-residents seeking asylum in the United States must file an application for asylum within one year of entering the United States. 8 U.S.C. § 1158(a)(2)(B); (Doc. 13-1, p. 2). Based on Mr. Toshkhua's allegation that he arrived in the United States on September 3, 2022, and the January 21, 2023, date on the notice issued by the DHS, (Doc. 1-1, p. 6), Mr. Toshkhua timely filed his asylum application.

Mr. Toshkhua's EARM and I-213 forms state that "KNX ERO verified that TOSKHUA has no immigration petitions or applications pending or approved applications with Citizenship and Immigration Services and is not immediately eligible for adjustment of status." (Doc. 13-3, p. 3; *see also* Doc. 13-2, p. 3). That information is inconsistent with USICS's acknowledgement in Mr. Toshkhua's EARM and in his I-213 that his asylum application is pending. (Doc. 13-2, p. 2; Doc. 13-3, p. 2).

pregnant. (Doc. 1, p. 6, ¶ 19).[7] Mr. Toshkhua obtained an employment authorization card and a work authorization social security card, and he works as a truck driver. (Doc. 1, p. 2, ¶ 2; Doc. 13-2, p. 3; Doc. 13-3, pp. 1–2). Mr. Toshkhua does not have a criminal record. (Doc. 13-3, p. 2).

On February 4, 2026, while driving a truck, Mr. Toshkhua was stopped at or near a weight station in Tennessee and was arrested and detained by ICE officers. (Doc. 1, p. 2, ¶ 2).[8] ICE arrested Mr. Toshkhua without a warrant, (Doc. 1, p. 2, ¶ 2; Doc. 13-2, p. 2), and obtained an administrative warrant later the same day, (Doc. 13-4).[9] The administrative warrant states that an immigration officer found probable cause to believe that Mr. Toshkhua is removable from the United States based on statements that Mr. Toshkhua made to an immigration officer or "other reliable evidence." (Doc. 13-4).[10] Mr. Toshkhua is detained at the Etowah County Jail.

---

[7] The record does not indicate that Mr. Toshkhua's marriage to a United States citizen has changed his immigration status.

[8] Mr. Toshkhua asserts that he entered the weight station. (Doc. 1, p. 2, ¶ 2). In Mr. Toshkhua's I-213 form, a special agent wrote that Mr. Toshkhua drove past the weight station. (Doc. 13-2, p. 2).

[9] In their brief in opposition to Mr. Toshkhua's habeas petition, the respondents contend that Mr. Toshkhua was arrested pursuant to a warrant. (*See* Doc. 13, p. 27). Mr. Toshkhua's DHS I-213 Record of Apprehension states that he was "taken into custody without [a] warrant due to likelihood of escape before a warrant could be obtained." (Doc. 13-2, p. 2) (brackets added). The record indicates that at some point on February 4, 2026, a warrant was issued for Mr. Toshkhua's arrest. (Doc. 13-4, p. 1).

[10] The warrant contains a line that indicates the language used to read the warrant to Mr. Toshkhua. (Doc. 13-4). The printed line states that the contents of the arrest warrant were read to Mr. Toshkhua in Russian, but someone struck through "Russian" and wrote "English." (Doc. 13-4).

(Doc. 1, p. 5, ¶ 11).

Based on these allegations, Mr. Toshkhua asserts violations of the Immigration and Nationality Act, his Fifth Amendment Due Process rights, and his Fourth Amendment rights. (Doc. 1, pp. 7–12). Mr. Toshkhua asks the Court, among other things, to prohibit the respondents from removing him from the United States without a court order, to direct the respondents to show cause as to why the Court should not grant his petition, to declare his detention unlawful, to order his immediate release, and to enjoin the respondents from re-detaining him unlawfully. (Doc. 1, p. 14).

***

## Subject Matter Jurisdiction

Mr. Toshkhua filed this habeas petition pursuant to 28 U.S.C. § 2241. (Doc. 1). Section 2241 enables district courts to grant writs of habeas corpus if a petitioner demonstrates that he is in custody in violation of the United States Constitution or laws. § 2241(a), (c). Habeas relief "is at its core a remedy for unlawful executive detention[;]" district courts have the authority to grant habeas relief in immigration-related cases. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020)

---

Mr. Toshkhua's I-213 form indicates that he does not speak or understand English; the I-213 indicates that Mr. Toshkhua speaks Russian. (Doc. 13-3, pp. 1–2). The warrant indicates that an interpreter was not present when the contents of the arrest warrant were read to Mr. Toshkhua. (Doc. 13-4).

6

(brackets added) (quoting *Munaf v. Green*, 553 U.S. 674, 693 (2008)); *Zadvydas v. Davis*, 533 U.S. § 678, 687–88 (2001).  Habeas petitioners must "file the petition in the district of confinement."  *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

In his § 2241 habeas petition, Mr. Toshkhua challenges the constitutionality of his confinement based on his immigration status.  (Doc. 1).  He is confined at the Etowah County Jail, which is located in the Northern District of Alabama.  (Doc. 1, p. 5, ¶ 11).  Therefore, the Court has subject matter jurisdiction over this matter.

## Statutory Framework

Mr. Toshkhua contends that he is detained pursuant to 8 U.S.C. § 1226 and therefore is entitled to a bond hearing.  (Doc. 1, pp. 7–8).  The respondents contend that Mr. Toshkhua is not entitled to a bond hearing because DHS is holding Mr. Toshkhua pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii)(II).  (Doc. 13, pp. 14–15).  Under 8 U.S.C. § 1225(b), § 1225(b)(1)(A)(iii)(II) applies to:

> an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Under 8 U.S.C. § 1225(b)(1)(A)(i), "[i]f an immigration officer determines" that a (b)(1)(A)(iii)(II) alien "is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien

removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

The respondents have not provided a cite for the proposition that Mr. Toshkhua is detained pursuant to § 1225(b)(1)(A)(iii)(II), and the Court has not found in the DHS/ICE documents that the respondents placed in the record a reference to that statute. The administrative warrant for Mr. Toshkhua's arrest cites sections 236 and 287 of the Immigration and Nationality Act. (Doc. 13-4). Those sections of the INA are codified at 8 U.S.C. § 1226 and 8 U.S.C. § 1357, respectively. *Immigration and Nationality Act*, U.S. DEP'T OF HOMELAND SEC. – U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act#top (last visited Mar. 13, 2026). The DHS Notice to Appear cites section 240 of the INA, which is codified at 8 U.S.C. § 1229a. *Immigration and Nationality Act*, U.S. DEP'T OF HOMELAND SEC. – U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act#top (last visited Mar. 13, 2026); (*See* Doc. 13-1, p. 1). The notice cites two subsections of section 212 of the INA. (Doc. 13-1, p. 4). Section 212 is codified at 8 U.S.C. § 1182. *Immigration and Nationality Act*, U.S. DEP'T OF HOMELAND SEC. – U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/laws-and-

8

policy/legislation/immigration-and-nationality-act#top (last visited Mar. 13, 2026).

The documents the respondents submitted not only lack citations to § 1225(b)(1)(A)(iii)(II) but also contain factual information that undermines the respondents' contention that Mr. Toshkhua is detained pursuant to § 1225(b)(1)(A)(iii)(II). As noted, for § 1225(b)(1)(A)(iii)(II) to apply, an alien must not have been "paroled into the United States." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). In Mr. Toshkhua's Notice to Appear, DHS alleges inaccurately that when Mr. Toshkhua entered the United States, he was not "then . . . paroled after inspection by an immigration officer." (Doc. 13-1, p. 1, ¶ 4). In Mr. Toshkhua's EARM, DHS acknowledges that Mr. Toshkhua was paroled when he entered the United States in September 2022, but DHS inaccurately states in the EARM, without factual support, that the parole was because of "manpower and space constraints." (Doc. 13-3, p. 2). Mr. Toshkhua's I-213 form contains the same information about Mr. Toshkhua's 2022 parole. (Doc. 13-2, p. 2). Mr. Toshkhua's 2022 parole record confirms that DHS paroled him five days after he entered the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).[11] Because Mr. Toshkhua was paroled into the United States, § 1225(b)(1)(A)(iii)(II) does not apply to him.

---

[11] Mr. Toshkhua's parole reflects a DHS finding that Mr. Toshkhua presented "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

9

Moreover, § 1225(b)(1)(A)(iii)(II) does not apply to Mr. Toshkhua because the record demonstrates that he has been physically present in the United States continuously for more than three years preceding his arrest in this case. The documents Mr. Toshkhua and the respondents have placed in the record demonstrate that after DHS paroled Mr. Toshkhua in 2022, he applied for asylum, and his application remains pending. (Doc. 1-1, p. 6; Doc. 13-3, p. 2). An alien must be "physically present" in the United States to file for and maintain an application for asylum. *I-589, Application for Asylum and for Withholding of Removal*, U.S. DEP'T OF HOMELAND SEC. – U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/i-589 (last visited Mar. 13, 2026).[12]    Thus, the record establishes that Mr. Toshkhua has been physically present in the United States for well over three years, undermining the respondents' reliance on § 1225(b)(1)(A)(iii)(II).[13]    Accordingly, 8 U.S.C. § 1225 (b)(1)(A)(iii)(II) does not govern to Mr. Toshkhua's detention.[14]

---

[12] In his habeas petition, Mr. Toshkhua alleges that "[s]ince his entry into the United States, [he] has fully complied with all immigration procedures.  He has never absconded or violated any condition of release." (Doc. 1, p. 6, ¶ 20) (brackets added).

[13] Mr. Toshkhua alleges that he "has continuously resided in Ohio for more than three years." (Doc. 1, p. 7, ¶ 3).

[14] The language Congress selected for § 1225 is telling.  The statute is titled:  "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Inspection and expedited removal of inadmissible aliens occurs at the country's borders and at designated ports of entry.  Section 1225(b)(1)(A)(iii)(II) excludes from its scope an alien who has

Because Mr. Toshkhua already has been paroled into the United States, has applied for asylum, has been in the United States continually for more than three years, and has been working in the United States for his current employer pursuant to an employment authorization card and a work authorization Social Security card, 8 U.S.C. § 1226 governs his detention. *Jennings*, 583 U.S. at 289 (stating that § 1226 "generally governs the process of arresting and detaining" aliens within the United States who have gone through the parole process); (Doc. 13-2, pp. 2–3) (listing the name of Mr. Toshkhua's employer and describing Mr. Toshkhua's work authorization cards).[15]   Under § 1226, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  § 1226(a).[16]   Upon arrest and detention, the Attorney General "may continue to detain the arrested alien" or "may release the alien" on bond or conditional parole.  8 U.S.C. § 1226(a)(1)–(2).  A noncitizen held under § 1226 may be released "if such release would not pose a

---

been "paroled into the United States" after being inspected at the point of entry into the United States.

[15] USCIS issues an I-766 employment authorization document for an alien who may work in the United States. *Employment Authorization Document*, U.S. DEP'T OF HOMELAND SEC. – U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/green-card/green-card-processes-and-procedures/employment-authorization-document (last visited Mar. 14, 2026).

Mr. Toshkhua alleges that he is "the sole financial provider for his household" and "has worked and paid taxes" while he has lived in the United States. (Doc. 1, p. 7, ¶ 3).

[16] Section 1226 is titled "Apprehension and detention of aliens."  8 U.S.C. § 1226.

danger to property or persons," and the noncitizen "is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

Though Mr. Toshkhua initially was detained without a warrant at 2:39 p.m. on February 4, 2026, (Doc. 13-2, p. 1), the arresting agent explained that Mr. Toshkhua was "taken into custody without a warrant due to likelihood of escape before a warrant could be obtained." (Doc. 13-2, p. 2; Doc. 13-3, p. 2). An immigration officer issued an administrative warrant for Mr. Toshkhua's arrest later the same day pursuant to the INA § 236, 8 U.S.C. § 1226. (Doc. 13-4); *see Jennings*, 583 U.S. at 302 (stating that § 1226 "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest")(quoting 8 U.S.C. § 1226(a)). Thus, the arresting officer and the immigration officer who issued the administrative warrant for Mr. Toshkhua's arrest understood that they needed a warrant to detain Mr. Toshkhua.

As the Supreme Court stated in *Jennings*, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

In their briefs, the parties discuss Mr. Toshkhua's status as an "applicant for admission" to the United States. Mr. Toshkhua concedes that he is "an applicant for admission" under § 1225(a), (Doc. 14, p. 5, ¶ 13); he has not yet received asylum or another legal status. Relying on *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503

12

(5th Cir. 2026), the respondents contend that § 1225 governs detention for all applicants for admission. For the reasons discussed, by its plain language, on the record in this case, § 1225 does not apply to Mr. Toshkhua's detention. In any event, the respondents acknowledge that their argument represents the minority view. (Doc. 14, pp. 13–14).[17]

\*\*\*

For the reasons discussed, Mr. Toshkhua has demonstrated that he is detained pursuant to 8 U.S.C. § 1226. Consequently, the respondents have violated § 1226 and have violated Mr. Toshkhua's right to due process by detaining him without a bond hearing. In light of these statutory and constitutional violations, the Court

---

[17] *Castanon-Nava v. United States Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), represents the majority view. *See also Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (collecting cases) ("Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."). Though the Eleventh Circuit has not spoken to this issue, the Eleventh Circuit has recognized the circuit split. *See Labrada-Hechavarria v. United States Att'y Gen.*, Nos. 23-13664, 24-10645, 2026 WL 496486, at \*2 (11th Cir. Feb. 23, 2026) ("[T]he federal appellate courts are divided as to the applicability of §§ 1225(a) and 1226(a).") (brackets added). As the Seventh Circuit observed in *Castanon-Nava,* the argument that § 1225 governs detention of all applicants for admission, regardless of their circumstances, would render § 1226 superfluous. *Castanon-Nava*, 161 F.4th at 1061. The Seventh Circuit stated that "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Castanon-Nava*, 161 F.4th at 1062 (first quoting *Zadvydas*, 533 U.S. at 693; and then citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)); *see Patel v. Hardin*, Case No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at \* 5 (M.D. Fla. Dec. 1, 2025) (citing *TRW v. Andrews*, 534 U.S. 19, 31 (2001)) ("Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application."). As the Eleventh Circuit has recognized, "the government has been challenged in at least 362 similar cases in federal district court and that 350 of those cases, decided by over 160 judges, have resolved this same issue against the government." *See Labrada-Hechavarria*, 2026 WL 496486, at \*2 (citing *Barco Mercado*, 2025 WL 329590, at \*4).

13

grants Mr. Toshkhua's habeas petition and orders as follows:

1. The respondents shall provide Mr. Toshkhua an individualized custody determination. *See* § 1226; *see also* 8 C.F.R. § 1236.1(c)(8). Mr. Toshkhua shall have a bond hearing in the Northern District of Alabama within 48 hours of the entry of this order.

2. The February 4, 2026 Notice to Appear, (Doc. 13-1), is void because it contains false information. Should DHS/USCIS continue to pursue removal of Mr. Toshkhua, DHS shall issue a new notice to appear that contains accurate information about his 2022 entry into the United States, his 2022 parole, and his asylum application. (Doc. 1-1, p. 6; Doc. 13-2, pp. 1–4; Doc. 14-1, pp. 1–2). If DHS issues a new notice to appear, DHS shall file the new notice with this Cout to confirm compliance with this instruction, and DHS shall notify the immigration court that this Court voided the February 4, 2026 notice, (Doc. 13-1), for the false information included in it. DHS shall provide to the immigration court a copy of this opinion describing the inaccurate information in Mr. Toshkhua's notice to appear, I-213, and EARM.

3. DHS shall confirm compliance with this order within 48 hours of entry of the order. DHS shall not transfer Mr. Toshkhua from this judicial district without authorization from this Court.

**DONE** and **ORDERED** this March 16, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

15